# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAYLOR SOLLINGER, on behalf of himself and all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| SMILEDIRECTCLUB, LLC, | |
| Defendant. | |

Plaintiff Taylor Sollinger ("Plaintiff"), by his undersigned counsel, on behalf of himself and all others similarly situated, complaining of defendant SmileDirectClub, LLC, ("Defendant" or "SmileDirect"), alleges based upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is a class action against SmileDirect for violations of New York General Business Law §§ 349 and 350, breach of implied warranty, violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, negligence, strict liability, failure to warn, breach of contract, and unjust enrichment.

2. SmileDirect is a national company specializing in remote home dentistry, claiming, "our clear aligners let you straighten your teeth on your schedule, from the comfort of your own home."[1]  SmileDirect represents, "In 3 easy steps, SmileDirectClub helps deliver a smile you'll love safely, discreetly, and without the hassle of in-person monthly visits."[2]

3. SmileDirect offers the following express "Smile Guarantee" on its website: "A licensed dentist will assess your smile and determine if SmileDirectClub aligners are the best fit

---

[1] https://smiledirectclub.com/how_it_works/
[2] *Id.*

for you.  If they determine they're not, the cost of your impression kit or scan is fully refundable. If you're unhappy with your aligners within the first 30 days after they are delivered, return them and all payments you've made for aligners will be refunded."[3]

4.      In or around October 2017, Plaintiff paid for and began regular use of SmileDirect invisible aligners ("SmileDirect Aligners") in accordance with their instructions to straighten his teeth.

5.      Emblematic of the dangers of SmileDirect Aligners, and contrary to SmileDirect's representations, shortly thereafter, and as a direct result of the SmileDirect Aligners, Plaintiff started to experience extreme pain and sensitivity with his teeth.  On January 8, 2018, Plaintiff sought medical treatment for continued pain in his mouth and teeth and was advised by his dentist that two teeth were cracked, requiring fillings for both teeth.

6.      Plaintiff's dentist attributed his cracked and damaged teeth to his use of the SmileDirect Aligners.  To date, Plaintiff continues to suffer daily from extreme pain because of the SmileDirect Aligners.

7.      As a result of the pain and damage, Plaintiff was forced to discontinue his use of the SmileDirect Aligners he purchased.

8.      In or around November 2017, the American Dental Association, "strongly discourage[d]" use of products such as SmileDirect Aligners "because of the potential for harm to patients."[4]

9.      In addition, a survey conducted by the American Association of Orthodontists ("AAO") found that 13 percent of its member orthodontists were seeing patients who tried "do-it-

---

[3] https://smiledirectclub.com/how_it_works/
[4] https://www.ada.org/en/publications/ada-news/2017-archive/november/ada-discourages-diy-orthodontics-through-resolution

yourself (DIY) teeth straightening; some of those attempts have caused irreparable damage."[5]  In response to its findings regarding the dangers and proliferation of DIY teeth-straightening products such as SmileDirect Aligners, the AAO issued a consumer alert, and in April 2017, the AAO filed complaints in 36 states alleging that SmileDirect was violating laws governing the practice of dentistry.[6]

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000.00 and there is diversity between a Plaintiff and a Defendant.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district, and because Defendant conducts substantial business in this district, have sufficient minimum contacts with this district, and otherwise purposely avail themselves of the markets in this district through the promotion, sale, and marketing of their services in this district.

## PARTIES

12.     Plaintiff is an individual residing in New York, New York.

13.     SmileDirect is a Tennessee limited liability company headquartered in Nashville, Tennessee.  SmileDirect is registered to do business in New York and has eight retail locations throughout New York County.

---

[5] https://www.aaoinfo.org/1/press-room/orthodontists-report-uptick-in-number-of-patients-attempting-diy-teeth-straightening
[6] https://www.ada.org/en/publications/ada-news/2017-archive/november/ada-discourages-diy-orthodontics-through-resolution

## STATEMENT OF FACTS

14.    A SmileDirect customer's "smile journey" begins by either molding impressions of their teeth at-home with a kit provided by SmileDirect or by going to one of SmileDirect's "SmileShops," which offer 3D teeth scanning.

15.    Plaintiff began his misadventure with SmileDirect Aligners on or around October 6, 2017, when he went for his appointment to have his teeth scanned at a New York City SmileShop.

16.    At the October 6th appointment, a woman, who was not a dentist and who, to the best of Plaintiff's knowledge, had no background in dentistry, took a 3D scan of Plaintiff's teeth. Plaintiff was advised that pain and tooth sensitivity were a normal part of the process. Plaintiff was not advised regarding what constituted an abnormal amount of pain or what to do if he experienced excessive pain while using SmileDirect Aligners. Nor was Plaintiff warned that SmileDirect Aligners could damage his teeth.

17.    On or around October 13, 2017, Plaintiff made a payment to SmileDirect for $1,700.

18.    After returning two sets of SmileDirect Aligners because of improper fit, Plaintiff began to use the third set he received as directed. In late December 2017, Plaintiff began to experience pain in his teeth and gums on a daily basis. To Plaintiff's knowledge, he was not assigned a dentist or orthodontist to provide oversight of the process. He never met with or spoke to a dentist at the SmileDirect SmileShop. He was not, despite requesting this information, provided with the name of a dentist that would oversee his process. No dentist associated with SmileDirect ever contacted Plaintiff.

4

19.     On January 8, 2018, Plaintiff sought medical treatment from dentist Paolo Saggese, DMD for the pain and damage to his teeth.

20.     Plaintiff's teeth were extremely sensitive, and the root of one tooth was clearly visible to the untrained eye.

21.     Dentist Paolo Saggese attributed Plaintiff's pain and damage to the use of SmileDirect Aligners.  Dr. Saggese advised Plaintiff that the SmileDirect Aligners put too much pressure on his teeth, cracked them, and required fillings.

22.     Dentist Paolo Saggese advised to never wear the SmileDirect Aligners again due to the damage and pain.

23.     On April 2, 2018, after continued pain and problems with his teeth, Plaintiff again sought treatment from Dr. Paolo Saggese for pain and discomfort with his teeth.  Dr. Saggese told Plaintiff, "I can't tell how far the damage is. The Smile Direct Club product really damaged your teeth."

24.     In January through early-March 2018, Plaintiff and SmileDirect exchanged communications concerning the above-described pain and damage to his teeth.  Despite that Plaintiff provided SmileDirect with the requested dental records and x-rays, nothing was done by SmileDirect to correct or mitigate the injuries caused to Plaintiff.

25.     Plaintiff chose SmileDirect based on marketing and informational materials that promised SmileDirect would safely straighten his teeth, such as:



26.     Contrary to Plaintiff's experience – where he had no contact with a dentist or orthodontist through his "smile journey" – SmileDirect represents that the procedures and products it employs are directed under the supervision of and are monitored by licensed dentists.   For example:[7]

**ASK THE DOCTOR**

**Meet the dentists and orthodontists behind your new smile**

Maybe you've seen a post on social media, or you're researching teeth straightening options on Google. Or maybe you've taken the first step to determine if SmileDirectClub's invisible aligners are right for you and you're asking yourself, *now what*? With the help of our duly licensed dentists and orthodontists, we're here to explain the process and some of the benefits of teledentistry (clear braces delivered to you at home!). So you can sleep, and smile, easy

**How a doctor monitors your new smile.**

Whether you've completed your at-home impression kit or you've gone to a SmileShop for a 3D scan, the basic process for making your new smile is the same for everyone. SmileDirectClub's aligners are offered through a network of over 225 duly licensed dentists and orthodontists.  These doctors have many years of aligner therapy experience.  Each SmileDirectClub customer is assigned a dentist or orthodontist who is licensed where they live.

Your provider will assess your individual case, including your medical and dental history, and determine if SmileDirectClub invisible aligners are the right fit for you. Then you'll

---

[7] https://blog.smiledirectclub.com/doctors-behind-your-smile/

receive a 3D image of your new smile generated from your impressions or scan. We'll create your individualized smile plan, ship your aligners, and remotely follow your progress all the way through the end of your smile journey. Your doctor will oversee your new smile, and every 90 days you'll be able to check in with them when you log into your account. You can reach out to your doctor at any time through the dental team by phone or through your online account.

**Who are the dentists?**

A Clinical Advisory Board guides SmileDirectClub's network of dentists and orthodontists. In fact, the dentists and orthodontists in our network don't work for SmileDirectClub at all. They can prescribe invisible aligners to their customers, but they're under no obligation to recommend SmileDirectClub's aligners specifically.

The Clinical Advisory Board is responsible for the establishment of recommended clinical guidelines and best practices for at-home invisible aligners. The board makes recommendations to SmileDirectClub on its practices and services.

"An individual who is requesting treatment by using SmileDirectClub's aligners is receiving the same level of care from a treating dentist or orthodontist as an individual visiting a traditional orthodontist or dentist for treatment.  The teledentistry platform allows for more convenient access and flexibility for individuals who may not have access to local care," says Jeffrey Sulitzer, DMD, Lead Dentist at SmileDirectClub.

**Why teledentistry?**

Teledentistry is a more convenient and accessible option for most people. It also offers doctors the ability to provide more affordable options for orthodontic treatment. That's why SmileDirectClub invisible aligners cost up to 60% less than traditional braces and other teeth straightening options. SmileDirectClub is a leader in promoting and developing advanced technology. We've also made it available to local orthodontists and general dentists while improving everyone's access to care.

"We define quality as the intersection of customer satisfaction and the Standards of Care. Our affiliated network will always do their absolute best to make customers happy with the results of their smile. We utilize the Standards of Care established by the dental professional community," says Dr. Sulitzer.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings the First and Second Claims for Relief, as set forth below, as a

class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class

consisting of all individuals who purchased, owned, or used SmileDirect aligners in the State of New York whose teeth were not straightened (the "NY Sub-Class").

28.     Plaintiff brings the Third, Fourth, Eighth and Ninth Claims for Relief, as set forth below, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all individuals who purchased, owned, or used SmileDirect Aligners whose teeth were not straightened (the "Class").

29.     Plaintiff brings the Fifth through Seventh Claims for Relief, as set forth below, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all individuals who purchased, owned, or used SmileDirect Aligners and experienced cracked, damaged, or otherwise injured teeth or gums (the "Physical Injury Sub-Class").

30.     Plaintiff reserves the right to modify or amend the NY Sub-Class, Class, and Physical Injury Sub-Class definitions, as appropriate.

31.     The members of the NY Sub-Class, Class, and Physical Injury Sub-Class are so numerous that joinder of all members is impracticable.  Although the exact number of members of the NY Sub-Class, Class, and Physical Injury Sub-Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff reasonably believes there are thousands of members of the NY Sub-Class, Class, and Physical Injury Sub-Class.

32.     Common questions of law and fact exist to all members of the NY Sub-Class, Class, and Physical Injury Sub-Class, and predominate over any questions solely affecting individual members.  Among the questions of law and fact common to the NY Sub-Class, Class, and Physical Injury Sub-Class are:

(a)      whether SmileDirect Aligners are defective;

(b)    whether SmileDirect misrepresented its use and relationship with licensed practitioners in connection with product implementation.

(c)    whether SmileDirect Aligners are defectively designed and/or manufactured;

(d)    whether, prior to sale, SmileDirect knew or reasonably should have known that SmileDirect Aligners were defective;

(e)    whether SmileDirect concealed from and/or failed to disclose to Plaintiff and the Classes material facts regarding defects with the SmileDirect Aligners;

(f)    whether SmileDirect knew or reasonably should have known that SmileDirect Aligners were defective after distributing them to Plaintiff and the Classes;

(g)    whether SmileDirect breached the implied warranty of merchantability relation to SmileDirect Aligners;

(h)    whether SmileDirect breached its common law and/or statutory duty to Plaintiff and the Classed;

(i)    whether SmileDirect's conduct was negligent;

(j)    whether SmileDirect is subject to strict liability;

(k)    whether SmileDirect failed to adequately warn Plaintiff and the Classes about the dangers of SmileDirect Aligners;

(l)    whether SmileDirect breached its contract with Plaintiff and the Classes;

(m)    whether SmileDirect was unjustly enriched;

(n)    whether SmileDirect's conduct violated New York General Business Law § 349;

(o)    whether SmileDirect's conduct violated New York General Business Law § 350;

(p)    whether Plaintiff and the Classes are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages; and

(q)     whether SmileDirect should be enjoined from selling and marketing SmileDirect Aligners.

33.     Plaintiff's claims are typical of the claims of the members of the Classes, as Plaintiff and the other members of the Classes sustained damages arising out of the same wrongful conduct by Defendants as alleged herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Classes and has retained counsel competent and experienced in class action litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Classes.

35.     A class action is superior to all other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Classes is impracticable. Furthermore, as the damages suffered by the individual class members may be relatively small, the expense and burden of individual litigation makes it impracticable for members of the Classes to seek redress individually for the wrong done to them.  There will be no difficulty in the management of this action as a class.

## FIRST CLAIM FOR RELIEF

### (Violation of N.Y. GBL § 349 on behalf of Plaintiff and the NY Sub-Class against Defendant)

36.      Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

37.     Plaintiff and the NY Sub-Class have been injured and suffered damages by violations of section 349(a) of New York General Business Law (the "GBL"), which states:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

38.     Defendant engaged in acts and practices that were deceptive or misleading in a material way and that injured Plaintiff and the NY Sub-Class.  Such acts and practices were

10

likely to mislead a reasonable consumer acting reasonably under the circumstances existing at the time.

39.    Defendant's deceptive acts include implying that it works cooperatively and coordinates with licensed dentists, when in fact it fails to provide any meaningful medical review in connection with its procedures and does not work cooperatively with or coordinate with licensed dentists.

40.    Defendant's deceptive acts also include representing and implying that licensed dentists and other professionals will "oversee your new smile," when in fact the licensed dentists and other professionals were uninvolved in treatment or care of Plaintiff and the NY Sub-Class.

41.    Defendant's deceptive acts further include implying that its products were safe and effective, when in fact they were dangerous and defective.

42.    Plaintiff and the NY Sub-Class have been damaged by Defendant's violations of section 349 of the GBL, for which he seeks recovery of the actual damages he suffered because of Defendant's willful and wrongful violations of section 349, in an amount to be determined at trial.

43.    Plaintiff and the NY Sub-Class also seeks to enjoin Defendant's practices that violate section 349 of the GBL.

44.    Plaintiff and the NY Sub-Class seeks treble damages and an award of reasonable attorney's fees pursuant to section 349(h) of the GBL.

## SECOND CLAIM FOR RELIEF

### (Violation of N.Y. GBL § 350 on behalf of Plaintiff and the NY Sub-Class against Defendant)

45.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

46.     Plaintiff and the NY Sub-Class have been injured and suffered damages by violations of section 350 of the GBL which states:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

47.     Defendant's false, misleading, and deceptive acts or practices were made in connection with advertisements within the scope of section 350-a of the GBL.  For example, Defendant's representations that its products are safe and effective, and that licensed dentists and other professionals will "oversee your new smile," are false.

48.     Plaintiff and the NY Sub-Class were induced to purchase Defendant's products by Defendant's representations.

49.     Defendant willfully and knowingly engaged in the conduct described above.

50.     Plaintiff and the NY Sub-Class have been damaged by Defendant's violations of section 350 of the GBL, in an amount to be determined at trial.

51.     Plaintiff and the NY Sub-Class also seek to enjoin Defendant's practices that violate section 350 of the GBL.

52.     Plaintiff and the NY Sub-Class seek treble damages and an award of reasonable attorney's fees pursuant to section 350-e of the GBL.

### THIRD CLAIM FOR RELIEF

### (Breach of Implied Warranty on behalf of Plaintiff and the Class against Defendant)

53.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

54.     Defendant impliedly warranted to Plaintiff and the Class that its SmileDirect Aligners were of merchantable quality, fit for their ordinary and intended use, and not otherwise

injurious to consumers.  The ordinary purpose for which the subject invisible aligners are used is, among other things, to align teeth at-home in a manner that does not unnecessarily and unreasonably expose users to needless harm or risk.

55.    Defendant breached its implied warranty of merchantability when it designed, manufactured, distributed, and sold its SmileDirect Aligners in an unsafe and un-merchantable condition.  This defect existed at the time the product left Defendant's hands.

56.    This defect was the direct and proximate cause of the injuries and losses suffered by Plaintiff and the Class.

57.     Plaintiff and the Class have suffered damages caused by Defendant's breach of the implied warranty of merchantability in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### (Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. on behalf of Plaintiff and the Class against Defendant)

58.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

59.    Defendant is a "warrantor" within the meaning of Section 2301(5) of the Magnuson-Moss Warranty Act (the "Act")

60.    Plaintiff and the Class are "consumers" within the meaning of Section 2301(3) of the Act.

61.    The subject invisible aligners were sold and supplied to Plaintiff and the Class by Defendant.

62.    Defendant impliedly warranted that the subject invisible aligners were merchantable and fit for ordinary and intended use, and not otherwise injurious to consumers.

63.     Defendant's implied warrant is an implied warranty within the meaning of Section 2301(7) of the Act.

64.     Defendant breached its implied warranty.

65.     Defendant has had an adequate opportunity to cure or remedy the breach of warranty but has failed to provide an adequate remedy.

66.     The amount in controversy for the purposes on Plaintiff's individual claim is more than $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

67.     Plaintiff and the Class have suffered damages caused by Defendant's violations of the Act in an amount to be determined at trial.  Further, under Section 2310(d)(2) of the Act, Plaintiff and the Class are entitled to an award of reasonable attorney's fees.

## FIFTH CLAIM FOR RELIEF

### (Negligence on behalf of Plaintiff and the Physical Injury Sub-Class against Defendant)

68.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

69.     At all times relevant to this action, Defendant had a duty to exercise reasonable care and to comply with the existing standards of care in their preparation, design, research, development, manufacture, inspection, labeling, marketing, promotion and sale of SmileDirect products, which Defendant introduced into the stream of commerce, including a duty to ensure that users would not suffer from unreasonable, dangerous or untoward adverse side effects.

70.     At all times relevant to this action, Defendant knew or reasonably should have known that the SmileDirect Aligners were unreasonably dangerous and defective when used as directed and as designed.

71.     Based on what it knew or reasonably should have known, Defendant deviated from principles of due care, deviated from the standard of care, and was otherwise negligent in one or more of the following particulars:

(a) In failing to conduct those tests and studies necessary to determine that the use of SmileDirect products was dangerous to teeth and contraindicated for use.

(b) In failing to warn Plaintiff and the Physical Injury Sub-Class that the use of SmileDirect products was dangerous to teeth and contraindicated for use.

72.     At all relevant times, Defendant knew or reasonably should have known that SmileDirect Aligners were unreasonably dangerous and defective when used as directed and designed.

73.     The product defects alleged above were a substantial contributing cause of the injuries and damages suffered by Plaintiff and the Physical Injury Sub-Class.

74.     The injuries and damages suffered by Plaintiff and the Physical Injury Sub-Class were the reasonably foreseeable results of Defendant's negligence.

75.     As a direct and proximate cause of the Defendant's negligence, Plaintiff and the Physical Injury Sub-Class suffered damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

## (Strict Liability on behalf of Plaintiff and the Physical Injury Sub-Class against Defendant)

76.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

77.     Plaintiff and the Physical Injury Sub-Class are persons that the Defendant should reasonably foresee as being subject to the harm caused by defectively designed products insofar

as Plaintiff and the Physical Injury Sub-Class were the type of persons for whom the products were intended to be used.

78.    Defendant, which is engaged in the business of selling the products, manufactured and supplied the products and placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the products.

79.    The products supplied to Plaintiff and the Physical Injury Sub-Class were defective in design and formulation and unreasonably dangerous when they left the hands of Defendant, the manufacturers and suppliers, and they reached the user and consumer of the products, Plaintiff and the Physical Injury Sub-Class, without substantial alteration in the condition in which they were sold.

80.    The products manufactured by Defendant were unreasonable and dangerously defective beyond the extent contemplated by ordinary consumers with ordinary knowledge regarding these products.

81.    Defendant's products were defective due to inadequate warning and/or inadequate clinical trials.

82.    Defendant's products were defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of injury from their products, they failed to provide adequate warnings to the medical community and consumers and continued to promote the products as safe and effective.

83.    The product defects alleged above were a substantial contributing cause of the injuries suffered by Plaintiff and the Physical Injury Sub-Class.

## SEVENTH CLAIM FOR RELIEF

### (Failure to Warn on behalf of Plaintiff and the Physical Injury Sub-Class against Defendant)

84.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

85.     Defendant manufactured products and placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the products.

86.     Defendant's products were defective due to inadequate warning and/or inadequate clinical trials.

87.     Defendant's products were defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of injury from their products, they failed to provide adequate warnings to the medical community and consumers and continued to promote them as safe and effective.

88.     The defective warnings and labeling were substantial factors in bringing about the injuries to the Plaintiff and the Physical Injury Sub-Class.

89.     As the direct and proximate cause of the products manufactured and/or supplied by Defendants, and specifically their failure to warn, and their negligence, carelessness, other wrongdoing and actions described herein, Plaintiff and the Physical Injury Sub-Class suffered injuries.

17

## EIGHTH CLAIM FOR RELIEF

### (Breach of Contract on behalf of Plaintiff and the Class against Defendant)

90.     Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

91.     Plaintiff/the Class and Defendant have a contract whereby Plaintiff and the Class agreed to pay and did pay Defendant a substantial sum in exchange for products and services to safely straighten their teeth.

92.     Despite receiving and retaining Plaintiff's and the Class's money for supposedly safe teeth-straightening products and services, and using the products exactly as directed, Plaintiff's and The Class's teeth were not safely straightened.

93.     To the contrary, for example, Plaintiff's teeth have been damaged, cracked, and in worse shape than before he paid for and used Defendant's products.

94.     As a result of Defendant's breach of contract, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

### (Unjust Enrichment on behalf of Plaintiff and the Class against Defendant)

95.     Plaintiff repeats and realleges all preceding paragraphs as if set forth fully herein.

96.     As detailed above, Plaintiff and the Class have conferred a benefit upon Defendant, specifically the fees to which it would not otherwise have been entitled.

97.     Defendant's retention of the money it received after selling Plaintiff and the Class a defective product is an unjust enrichment and violates equity and good conscience.

98.     As a result of Defendant's unjust enrichment, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the Classes prays for judgment as follows:

(a)     Certifying the proposed Classes pursuant to Fed. R. Civ. P. 23;

(b)     Designating Plaintiff as representative of the proposed Classes and designation of Plaintiff's counsel as counsel for the Classes;

(c)     Awarding Plaintiff and the other members of the Classes compensatory, statutory, and/or exemplary damages for the wrongful acts alleged;

(d)     Awarding Plaintiff and the other members of the NY Sub-Classes treble damages for Defendant's violations of GBL §§ 349 and 350;

(e)     Enjoining Defendants from continuing the wrongful acts and practices alleged;

(f)     Awarding Plaintiff and the other members of the Classes the costs of the suit and attorneys' fees;

(g)     Awarding Plaintiff and the other members of the Classes pre and post-judgment interest at the maximum legal rate; and

(h)     Awarding Plaintiff and the other members of the Classes such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: June 26, 2019

– SIGNATURE ON NEXT PAGE –

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*

Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com
-and-
David J. Stone
**BRAGAR EAGEL & SQUIRE, P.C.**
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
stone@bespc.com

*Co-Counsel for Plaintiff and the Classes*