UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TAYLOR SOLLINGER, on behalf of himself : 
and all others similarly situated, :
                                           :
                       Plaintiff, :
                                           :  Civil Action No. 1:19-cv-05977
     v. :
                                           :
                                           :
SMILEDIRECTCLUB, LLC, :
                                           :
                       Defendant. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT SMILEDIRECTCLUB, LLC'S
<u>MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS</u>**

**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**

Dave Rammelt (*pro hac vice forthcoming*)    Michael J. Barrie (No. 5057450)
Nick Secco (*pro hac vice forthcoming)*      39 Broadway, 25th Floor
200 Public Square, Suite 2300              New York, NY 10006-3039
Cleveland, Ohio 44114                   Telephone: (302) 442-7010
drammelt@beneschlaw.com            Facsimile: (302) 442-7012
nsecco@beneschlaw.com               mbarrie@beneschlaw.com

Sean A. Meluney (*pro hac vice forthcoming*)  *Counsel to Defendant SmileDirectClub, LLC*
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801
smeluney@beneschlaw.com

Dated: July 31, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

    A.    The SDC Registration Process.............................................................. 3

    B.    The Arbitration Agreement..................................................................... 4

    C.    Procedural History .................................................................................. 5

ARGUMENT ...................................................................................................................... 5

    A.    Procedural Posture.................................................................................. 5

    B.    Legal Standard ........................................................................................ 6

    C.    The Federal Arbitration Act................................................................... 7

    D.    Where the FAA Governs the Parties' Agreement and This Dispute, the Arbitrator Should Decide All Questions of Arbitrability ......................................................... 8

    E.    Even if the Court Were to Address Questions of Arbitrability, SDC Is Entitled to Invoke the Valid and Enforceable Arbitration Agreement ...................................... 9

        1.    The dispute falls within the scope of the ADR Provision.......................... 10

        2.    Plaintiff assented to the ADR Provision .................................................... 11

        3.    The location of the ADR Provision is irrelevant ....................................... 15

    F.    The Matter Should Be Stayed Pending the Outcome of Arbitration .................... 16

CONCLUSION.................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ........................................................8

*Armstead v. Starbucks Corp.*, 2017 WL 5593519 (S.D.N.Y. Nov. 17, 2017)..............................12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ........................................7

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ...........................................................10

*Bar-Ayal v. Time Warner Cable Inc.*, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006)...............5, 10

*Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893 (S.D.N.Y.
    Nov. 20, 2017) ..............................................................................................................6, 16

*Bernardino v. Barnes & Noble Booksellers, Inc.*, 2018 WL 671258 (S.D.N.Y. Jan.
    31, 2018) ...........................................................................................................................7

*In re Currency Conversion Fee Antitrust Litig. (Currency Conversion I)*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003)...............................................................................11

*Contec Corp. v. Remote Solution Co.*, 398 F.3d 205 (2d Cir. 2005) ............................................9

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).........................................................10

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) .............................................12, 13

*Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000) ..............................................................8

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2001)..............................................................................................10

*JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ...............................................10, 11

*Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015)..................................................................7, 16

*Khanna v. Am. Express Co.*, 2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011) ..................................7

*Lapina v. Men Women N.Y. Model Mgmt.*, 86 F.Supp. 3d 277 (S.D.N.Y. 2015)...........................8

*Laumann v. N.H.L.*, 989 F. Supp. 2d 329 (S.D.N.Y. 2013)...........................................................9

*Lismore v. Societe Generate Energy Corp.*, 2012 WL 3577833 (S.D.N.Y. Aug.
    17, 2012...............................................................................................................................8

*Marcus v. Collins*, 2016 WL 8201629 (S.D.N.Y. Dec. 30, 2016) ........................................6

*Mallh v. Showtime Networks, Inc.*, 2017 WL 5157247 (S.D.N.Y. Nov. 7, 2017) ........................15

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) ........................................ *passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ................................7

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ..................................12

*Nicosia v. Amazon.com Inc.*, 834 F.3d 220 (2d Cir. 2016) ..................................6, 10, 12

*Oppenheimer  Co. v. Neidhardt*, 56 F.3d 352 (2d Cir. 1995) ........................................7

*Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483 (2d Cir. 2013) ....................................7

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev.*, 55 Cal. 4th 223 (Cal. 2012) ....................8

*Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537 (S.D.N.Y. 2018) ................................ *passim*

*Rent-A-Ctr. West v. Jackson*, 561 U.S. 63 (2010) ........................................1, 9

*Sanders v. Forex Capital Mkts., LLC*, 2011 WL 5980202 (S.D.N.Y. Nov. 29, 2011) ..................................7

*Sgouros v. Trans Union Corp.*, 817 F. 3d 1029 (7th Cir. 2016) ..................................12

*Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378 (S.D.N.Y. 2017) ................................5

**Statutes**

9 U.S.C. § 3 ........................................1, 2, 6, 7

9 U.S.C. § 4 ........................................1, 6

Federal Arbitration Act ........................................ *passim*

**Other Authorities**

American Arbitration Association Commercail Arbitration Rule R-7 ............................................9

Defendant SmileDirectClub, LLC ("SDC" or the "Company"), by and through undersigned counsel, hereby submits this Memorandum of Law in support of SDC's *Motion to Compel Arbitration and to Stay Proceedings* (the "Motion"), filed contemporaneously herewith.

## PRELIMINARY STATEMENT

Pursuant to Sections 3 and 4 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 3-4, SDC moves this Court to compel arbitration of Plaintiff Taylor Sollinger's ("Plaintiff" and, together with SDC, the "Parties") claims and stay the proceedings pending such arbitration. Plaintiff registered as a customer with SDC by creating an account, which is a mandatory requirement of the registration process before a user can become an SDC clear aligner candidate. When Plaintiff created his account on October 5, 2017, he agreed to SDC's "Informed Consent, and Terms & SmilePay Conditions" (the "Conditions"). *See* Affidavit of Justin Skinner (the "Skinner Affidavit") at ¶¶ 5, 12, and 14, **Exhibit 1** and **2**. By clicking on the "Informed Consent" hyperlink, Plaintiff was presented with a clear and conspicuous alternative dispute resolution provision (the "ADR Provision") that designates either binding arbitration conducted by the American Arbitration Association ("AAA") or small claims court for any issues arising out of Plaintiff's use of SDC's products and services. *Id.* at ¶¶ 5, 10, 12, and 14, **Exhibit 1**, p. 3. In consenting to the Conditions, Plaintiff agreed to be bound by the terms of, *inter alia*, the ADR Provision.

Accordingly, filing this action in federal court violates the Parties' agreement, and therefore this action cannot proceed and must be stayed in favor of arbitration.[1] Under blackletter New York law, an arbitrator, not the District Court, must make the initial determination of arbitrability. *See, e.g., Rent-A-Ctr. West v. Jackson*, 561 U.S. 63, 68-69 (2010). The rules of the

---

[1] Plaintiff's claims must proceed as a binding AAA arbitration because the amount in controversy exceeds the maximum limit for small claims court.

AAA, to which the Parties agreed and which are explicitly referenced in the ADR Provision, specifically empower the arbitrator to decide issues of arbitrability.

Even if the Court decides to address arbitrability issues itself, it should grant SDC's motion to compel.  Plaintiff's dispute with SDC centers on allegations that SDC engaged in false advertising and deceptive business practice and for distributing defective aligners.  The ADR Provision is valid and enforceable and the ADR Provision encompasses Plaintiff's claims.  The terms of the ADR Provision are fair—indeed generous—to customers such as Plaintiff, as demonstrated below.  These terms require that "any dispute regarding the products and services offered" by SDC "will be determined by submission to arbitration…using the rules of [AAA]." Skinner Affidavit at ¶ 10; **Exhibit 1**, pg. 3.  Plaintiff's claims allegedly arise from his use of SDC products and services and therefore fall within the broad scope of the ADR Provision.

Pursuant to the FAA, where parties are bound by a mandatory arbitration provision, and a party (i) seeks to compel such arbitration and (ii) requests a stay of the district court proceedings, the district court shall stay the proceedings pending the arbitration rather than dismiss the action. 9 U.S.C. § 3.

As set forth in further detail herein, the Court should compel arbitration of Plaintiff's claims and stay these proceedings pending such arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a Complaint against SDC alleging violations of "New York General Business Law §§ 349 and 350, breach of implied warranty, violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., negligence, strict liability, failure to warn, breach of contract, and unjust enrichment."  Compl. at ¶ 1.  However, Plaintiff agreed that "any dispute regarding the products and services" would be "determined by submission to arbitration and not by lawsuit filed in any

court…," when he registered as a customer of SDC.  *See* Skinner Affidavit at ¶ 10, **Exhibit 1**, pg. 3.

> **A.      The SDC Registration Process**

In order to become an SDC clear aligner candidate, consumers must first register by creating a SDC account.  *Id.* at ¶ 3.  Consumers, like Plaintiff, can create an account themselves directly through the company's website, at www.smiledirectclub.com, or during an in-person visit to one of the Company's physical SmileShops where they are required to complete the same online process.  *Id.* at ¶ 4.  During the account creation process, and before he could finalize his registration as a customer of the Company, Plaintiff was required to check affirmatively the following clickwrap checkbox in which he agreed to the Company's **Informed Consent, Terms & SmilePay Conditions**:



*Id.* at ¶¶ 5, 7; **Exhibit 3.**

The checkbox itself is conspicuous and is not pre-checked.  After Plaintiff affirmatively checked the box agreeing to the Conditions, he had to select "Finish My Account" in order to proceed with his registration.  *Id.* at ¶ 7.  The full Informed Consent and Terms are presented to users like Plaintiff as a hyperlink that, when clicked, will take the user to another screen that displays the full, conspicuous text of each of the policies.  *Id.* at ¶ 8.   Customers have the option to read, download and/or print the Conditions.  *Id.* at ¶ 9.  When Plaintiff was presented with this clickwrap consent screen, he could click on the "**Informed Consent**" hyperlink and would then be presented with the ADR Provision.  *Id.* at ¶¶ 11-12.

The Company's servers maintain an electronic file for each customer, including Plaintiff, that logs the customer's transactions and interactions, including each customer's assent to the Informed Consent terms. *Id.* at ¶ 13. The following is a screen shot of one of the Company's servers, which recorded the exact date and time that Plaintiff assented to these terms on October 5, 2017, at 2:08PM:[2]



*Id.* at ¶ 14, **Exhibit 4**.

As noted above, to register his account and receive treatment, Plaintiff (as with any user) affirmatively agreed to the Company's terms, including the mandatory arbitration provision, by checking the box that "I agree to SmileDirectClub's Informed Consent, and Terms & SmilePay Conditions" before he could proceed. Before agreeing, Plaintiff had the option to read, download, or print the terms, including the mandatory ADR Provision set forth in the Informed Consent terms.

### B.    The Arbitration Agreement

The Informed Consent terms to which Plaintiff agreed, and which includes the ADR Provision, contain several sections, separated by bolded headings. The Informed Consent page had a subheading entitled "AGREEMENT TO ARBITRATE" that stated:

> AGREEMENT TO ARBITRATE – I hereby agree that any dispute regarding the products and services offered my SmileDirectClub and/or affiliated dental professionals, including but not limited to medical malpractice disputes, will be determined by submission to arbitration and not my lawsuit filed in any court, except claims within the jurisdiction of Small Claims Court, I understand that to initiate the arbitration, I must send a Demand for Arbitration via U.S. Mail, postage prepaid to Alex Fenkell,

---

[2] SDC's servers keep records based upon Coordinated Universal Time ("UTC"). *Id.*

> SmileDirectClub, LLC, Bank of America Plaza, 414 Union Str., 8th Floor,
> Nashville, TN 37219, Nashville, Tennessee 37203. The Demand for
> Arbitration must be in writing to all parties, identify each defendant,
> describe the claim against each party, and the amount of damages sought,
> and the names of the Patient and his/her attorney. I agree that the arbitration
> shall be conducted by a single, neutral arbitrator selected by the parties and
> shall be resolved using the rules of the American Arbitration Association.

The ADR Provision favors the customer: (1) it permits the customer to arbitrate a dispute in the region where the customer resides; and (2) it allows the customer to bring certain claims in "Small Claims Court…."

### C.   Procedural History

Notwithstanding his agreement to arbitrate "any dispute regarding [SDC's] products and services…," Plaintiff filed his Complaint in this Court.  [D.I. 1]   Plaintiff served the Complaint upon the New York Secretary of State on July 3, 2019.   In lieu of filing an Answer to the Complaint, SDC has filed the instant Motion.  *See* SDC's Letter Motion filed on July 24, 2019 [D.I. 9].   The Court entered an Order granting the relief sought by the Letter Motion on July 25, 2019.  [D.I. 10]

### ARGUMENT

The ADR Provision, being reasonably conspicuous in a clickwrap agreement which required Plaintiff to affirmatively manifest his assent to the same, is binding upon Plaintiff.  The ADR Provision applies to all of the claims alleged in the Complaint.  Consequently, Plaintiff should be compelled to bring his claims in arbitration.  Further, these proceedings should be stayed pending the outcome of such arbitration.

### A.   Procedural Posture

SDC has filed the Motion in lieu of filing an Answer to the Complaint.  This is the appropriate mechanism through which to seek enforcement of the ADR Provision.  *See, e.g., Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378 (S.D.N.Y. 2017); and *Bar-Ayal v. Time Warner Cable*

*Inc.*, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006).  Such a motion to compel is non-dispositive.

*See Marcus v. Collins*, 2016 WL 8201629 at *1, n. 1 (S.D.N.Y. Dec. 30, 2016).

### B.     Legal Standard

SmileDirect brings the Motion pursuant to sections 3 and 4 of the FAA which provide, in

relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement…

9 U.S.C. § 3.

> A party aggrieved by the alleged failure, neglect, or refusal  of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action…of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceeding in the manner provided for in such agreement.

9 U.S.C. § 4.

In adjudicating motions to compel arbitration, the Court applies "a standard similar to that

applied in considering a motion for summary judgment, necessitating a consideration of 'all

relevant, admissible evidence submitted by the parties and contained in the pleadings […] together

with…affidavits' and drawing all inferences in favor of the non-moving party." *Plazza v. Airbnb,*

*Inc.*, 289 F. Supp. 3d 537, 547 (S.D.N.Y. 2018) *citing Nicosia v. Amazon.com Inc.*, 834 F.3d 220,

229 (2d Cir. 2016) (internal citation omitted).  "In the absence of a genuine issue of material fact

regarding the formation of the arbitration agreement, the motion to compel must be granted if the

dispute falls within the scope of the arbitration agreement."  *Bernardino v. Barnes & Noble*

*Booksellers, Inc.*, 2017 WL 7309893 *3 (S.D.N.Y. Nov. 20, 2017) *citing Meyer v. Uber Techs.,*

*Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal citations omitted) *adopted as modified by Bernardino v. Barnes & Noble Booksellers, Inc.*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018).  Where "the party seeking arbitration has substantiated the entitlement [to arbitration] by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."  *Sanders v. Forex Capital Mkts., LLC*, 2011 WL 5980202 at *3 (S.D.N.Y. Nov. 29, 2011) *citing Oppenheimer Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

The FAA requires a court to stay, rather than dismiss, a matter when compelling arbitration, upon the request of a party.  9 U.S.C. § 3.  "[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested."  *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015).

### C.     The Federal Arbitration Act

Congress's "clear intent" in enacting the FAA was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).  The Second Circuit recognizes this "preference for enforcing arbitration agreements applies even when the claims at issue are federal statutory claims …." *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486 (2d Cir. 2013).  Thus, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Khanna v. Am. Express Co.*, 2011 WL 6382603, at *2 (S.D.N.Y. Dec. 14, 2011)

(*quoting Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000)); *accord Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev.*, 55 Cal. 4th 223, 247 (Cal. 2012).

### D.     Where the FAA Governs the Parties' Agreement and This Dispute, the Arbitrator Should Decide All Questions of Arbitrability

Plaintiff agreed to be bound by the ADR Provision.  Plaintiff created an SDC account on October 5, 2017 and concedes that he created an account, had a 3D image of his teeth and gums created, and received aligners prescribed by his treating dentist. *See*, *e.g.*, Compl. at ¶ 4.  Because the ADR Provision is governed by the FAA, and because Plaintiff's claims fall within the scope of the ADR Provision, Plaintiff is bound by the agreement's provisions requiring resolution of disputes by binding arbitration, and delegating threshold arbitrability issues to the arbitrator.  For these reasons, the Court should refer the entire proceeding to arbitration.

Both the express terms of the ADR Provision and the transactions at issue confirm that the FAA governs.  First, the ADR Provision makes clear that the rules of the AAA will govern the interpretation and enforcement.  "[A] party who signs 'a contract containing an arbitration clause and incorporating by reference the AAA rules…cannot later disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability.'" *Lapina v. Men Women N.Y. Model Mgmt.*, 86 F.Supp. 3d 277, 283-84 (S.D.N.Y. 2015) (*quoting Lismore v. Societe Generate Energy Corp.*, 2012 WL 3577833 at *5 (S.D.N.Y. Aug. 17, 2012)) (internal citation omitted).  The FAA also applies when the transactions at issue affect interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77 (1995).  And, here, the Plaintiff has alleged that he is a resident of New York who bought goods and services from SDC, a national company headquartered in Tennessee.

Because arbitration is a matter of contract, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their

agreement covers a particular controversy." *Rent-A-Ctr. West*, 561 U.S. 63, 68-69.  The ADR Provision here delegates gateway questions of arbitrability to the arbitrator by incorporating the AAA Commercial Arbitration Rules.  Rule 7(a) of the AAA Rules provides:  "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."   AAA   Commercial   Arbitration   Rules   at   R-7(a) (https://www.adr.org/sites/default/files/CommercialRules_Web_FINAL_1.pdf)(effective October 1, 2013; last accessed July 31, 2019).  The Second Circuit has held that an arbitration agreement incorporating this very AAA rule "serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (S.D.N.Y. 2005); see *id*. ("whether the arbitration rights under [an agreement] were validly assigned [to a non-signatory defendant] is an issue …. within the jurisdiction of the arbitrator pursuant to AAA Rule R-7(a) as incorporated into the [agreement]"); *accord Laumann v. N.H.L.*, 989 F. Supp. 2d 329, 334 & n.18, 338 (S.D.N.Y. 2013) (applying AAA Rule R-7, where "there is a legitimate dispute about the scope and applicability of the [arbitration] clause, the threshold question of arbitrability must be referred to the arbitration").

Because "[t]here can be no doubt that the parties' Arbitration Agreement delegates issues of arbitrability to an arbitrator, not a court" under the AAA rules incorporated into Plaintiff's ADR Provision (*Contec*, 398 F.3d at 208), the Court should leave any arbitrability questions for the arbitrator to decide in the first instance.

### E.   Even if the Court Were to Address Questions of Arbitrability, SDC Is Entitled to Invoke the Valid and Enforceable Arbitration Agreement

For the reasons above, this Court need not proceed any further to determine that this dispute rightfully belongs in arbitration.  But if this Court rules on arbitrability, the Court's role under the

FAA is to determine "(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (citation omitted). "[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

<u>1.</u>      <u>The dispute falls within the scope of the ADR Provision</u>

Under the FAA, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc*., 475 U.S. at 650. Here, the ADR Provision provides that "any dispute regarding the products and services offered" by SDC "will be determined by submission to arbitration…using the rules of [AAA]." Courts are especially deferential to "broad" arbitration agreements, such as this one, which are "presumptively applicable to disputes involving matters going beyond the interpretation or enforcement of particular provisions of the contract." *JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) (quotations and alterations omitted). "The Supreme Court has repeatedly instructed that the FAA 'embodies a national policy favoring arbitration.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d at 228-29 (*quoting AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)) (internal citation omitted). "The FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Bar-Ayal*, 2006 WL 2990032 at *2 (S.D.N.Y. Oct. 16, 2006) (*quoting Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985)) (emphasis in original).

Here, the Complaint's "Preliminary Statement" evidences that this case arises out of and relates to SDC's "products and services," which are subject to the Conditions generally and the ADR Provision specifically.  All of Plaintiff's allegations relate to the "products and services," and his injuries flow from alleged physical injury allegedly caused by SDC having defectively designed aligners and allegedly failing to have a licensed dentist or orthodontist oversee the process.

Moreover, "[i]f the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated." *JLM Indus.*, 387 F.3d at 172; *see also In re Currency Conversion Fee Antitrust Litig. (Currency Conversion I)*, 265 F. Supp. 2d 385, 406 (S.D.N.Y. 2003).  The false advertising, failure to warn, implied warranty, and deceptive business practice claims "touch matters" within the Conditions.  *Currency Conversion I*, 265 F. Supp. 2d at 410 (plaintiffs' price-fixing claims "touch matters" covered by cardholder agreements containing arbitration clause); *JLM Indus.*, 387 F.3d at 176 (the term "collateral matters," however defined, encompassed plaintiff's Sherman Act claims).

### 2.    Plaintiff assented to the ADR Provision

Plaintiff is deemed by law under these circumstances to have assented to the terms of the ADR Provision.  That users may not bother to read additional terms when signing up for a new service is irrelevant to determining whether there was reasonable notice.  *See, generally, Plazza,* 289 F. Supp. 3d 537.  Plaintiff agreed to be bound by the Conditions, including the ADR Provision, because he had adequate notice of the Conditions when he registered for an SDC account and, by clicking to indicate he agreed to the Conditions, Plaintiff affirmatively manifested his assent to same.  The Second Circuit, along with courts around the country, has "recognized that an electronic

'click' can suffice to signify acceptance of a contract." *Meyer*, 868 F.3d at 75 (*quoting Sgouros v. Trans Union Corp.*, 817 F. 3d 1029, 1033-34 (7th Cir. 2016).)

A clickwrap agreement is an agreement where a user manifests assent by clicking an "I agree" box after being presented with a list of terms and conditions of use. *See Nicosia*, 834 F.3d at 233. And there is nothing "offensive" about clickwrap agreements "as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." Meyer, 868 F. 3d at 75. Courts routinely uphold clickwrap agreements. *See Armstead v. Starbucks Corp.*, 2017 WL 5593519 (S.D.N.Y. Nov. 17, 2017); and *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (collecting cases). Relative to browsewrap agreements, where users are not required to affirmatively manifest their assent, "clickwraps present a far simpler determination for a court given the express and unambiguous manifestation of assent through the 'click' of an 'I accept' button." *Plazza*, 289 F. Supp. 3d at 548.

When a company makes terms and conditions available through a hyperlink to a separate screen, "the validity of the ... agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). This Circuit has been called upon to rule on the enforceability of many different types of web-based contracts. One such controlling case is *Meyer v. Uber Techn., Inc.* where the user had to click a button marked "Register." Under the "Register" button, there were hyperlinks to the TERMS OF SERVICE & PRIVACY POLICY that would ultimately lead the client to the arbitration provision. In finding that the design of the website and language used to render notice was reasonably conspicuous, this Court analyzed several factors, including:

> (i) the payment screen was uncluttered, with only buttons to register
> the account or to connect the account with a pre-exisitng account,

12

along with the warning that by creating an Uber account you agree to the TERMS OF SERVICE & PRIVACY POLICY, (ii) the hyperlinks to the TERMS OF SERVICE & PRIVACY POLICY appeared directly below the registration button, (iii) the entire screen was visible at once without scrolling, (iv) although the sentence was in small font, there was contrasting dark print with a bright white background and the hyperlinks were in blue and underlined, and (v) Uber provided notice of the TERMS OF SERVICE & PRIVACY POLICY simultaneously with enrollment, "thereby connecting the contractual terms to the services to which they apply."

*Id.* at 78.  As here, the *Meyer* Court further noted that the website's language that "[b]y creating an Uber account, you agree," was a clear prompt directing users to read the terms and conditions and hyperlinks to the terms and conditions "does not preclude a determination of reasonable notice." *Id.*; *Fteja*, 841 F. Supp. 2d at 839 ("[C]licking [a] hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket. In both cases, the consumer is prompted to examine terms of sale that are located somewhere else.").

Likewise, in *Plazza*, the Court found that each of the plaintiffs were required on at least one occasion during the creation of their respective accounts with defendant to click on a box that showed they accepted defendant's terms of use, which included an arbitration provision.  The Court concluded that defendant's "sign-up procedure was sufficient inquiry notice of the terms of service which…included an arbitration provision." *Plazza*, 289 F. Supp. 3d at 551.

The relevant Conditions here are far more conspicuous than those in *Meyer* and are similar to those at issue in *Plazza*.  Plaintiff had to go through the registration process and create an account.  During registration, Plaintiff was taken to this screen:



*See* Skinner Affidavit at ¶ 5; **Exhibit 3**.  This screen is uncluttered and only has a few fields—

password, birth date, and a checkbox.  The user does not have to scroll beyond what is immediately

visible in order to find notice of the Company's terms of service, and more specifically its

"Informed Consent, and Terms & SmilePay Conditions."   As in *Meyer*, the hyperlinks are a

different color, the font is bold and underlined and are directly next to the clickbox.  To move

forward with creating an account, Plaintiff had to click—and thereby accept —"Informed Consent,

and Terms & SmilePay Conditions."  *Id.*  The full **Informed Consent** and **Terms** are presented to

users as a hyperlink that, when clicked, will take the user to another screen that displays the full,

conspicuous text of each of the policies.  When Plaintiff was presented with this clickwrap consent

screen, he could click on the "**Informed Consent**" hyperlink and would then be presented with

the ADR Provision that states:

> AGREEMENT TO ARBITRATE – I hereby agree that any dispute regarding the
> products and services offered my SmileDirectClub and/or affiliated dental
> professionals, including but not limited to medical malpractice disputes, will be
> determined by submission to arbitration and not my lawsuit filed in any court,
> except claims within the jurisdiction of Small Claims Court, I understand that to

14

initiate the arbitration, I must send a Demand for Arbitration via U.S. Mail, postage prepaid to Alex Fenkell, SmileDirectClub, LLC, Bank of America Plaza, 414 Union Str., 8th Floor, Nashville, TN 37219, Nashville, Tennessee 37203. The Demand for Arbitration must be in writing to all parties, identify each defendant, describe the claim against each party, and the amount of damages sought, and the names of the Patient and his/her attorney. I agree that the arbitration shall be conducted by a single, neutral arbitrator selected by the parties and shall be resolved using the rules of the American Arbitration Association.

*Id.* at ¶ 10; **Exhibit** 1, pg. 3.

SDC's servers maintain an electronic file for each customer, which includes each customers' assent to the Informed Consent terms; SDC's servers maintain a log of Plaintiff's transactions.  *Id.* at ¶¶ 13-14.  The following is a screen shot of the of the Company's servers, which recorded the exact date and time that Plaintiff assented to these terms on October 5, 2017, at 2:08PM:[3]



*Id.* at ¶ 14; **Exhibit 4**.

<u>3.    The location of the ADR Provision is irrelevant</u>

The ADR Provision is reasonably conspicuous, giving Plaintiff reasonable notice, because its sub-heading "AGREEMENT TO ARBITRATE" is entirely in capital letters.   Where an arbitration provision is reasonably conspicuous, its location within the document is irrelevant to its enforceability or applicability.  *See, e.g., Plazza* at 554; *Meyer*, 868 F.3d at 78-79 *and Mallh v. Showtime Networks, Inc.*, 2017 WL 5157247 (S.D.N.Y. Nov. 7, 2017).  "[T]he court in *Meyer* explicitly rejected the proposition that the location of an arbitration provision within a broader

---

[3] SDC's servers record time in UTC.  *Id.*

terms of use policy is a barrier to reasonable notice." *Bernardino* at \*9 *citing Meyer* at 78-79. Plaintiff had reasonable notice of the Conditions, including the ADR Provision, through SDCs' use of a clickwrap agreement requiring Plaintiff to affirmatively manifest his assent to the Conditions. The ADR Provision, with its capitalized sub-heading, was reasonably conspicuous and its location within the Conditions is irrelevant to its enforceability.

**F.      The Matter Should Be Stayed Pending the Outcome of Arbitration**

This matter should be stayed pending the outcome of arbitration, should Plaintiff seek to pursue it. "[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested." *Katz*, 794 F.3d 341, 345 (discussing the FAA). Such is the outcome that will result in the most efficient use of the Court's and the parties' resources. Imposing a stay also furthers the policy behind compulsory arbitration. Staying, rather than dismissing, the proceedings pending arbitration is preferable because "the dismissal of an arbitrable matter would convert the decision into an appealable order, thus controverting the FAA's underlying policy 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Plazza*, 289 F.Supp. 3d at 560 *citing Katz*, 794 F.3d at 346. A stay of this matter upon mandating that it proceed to arbitration pursuant to the ADR Provision is warranted and appropriate.

**[*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*]**

## CONCLUSION

WHEREFORE, based upon the foregoing, SDC respectfully requests that the Court enter an Order in substantially the same form submitted herewith, (i) requiring Plaintiff to arbitrate all of his claims in accordance with the ADR Provision; (ii) staying the proceedings pending such arbitration; and (iii) granting to SDC such other and further relief the Court deems just and proper under the circumstances.

**BENESCH, FRIEDLANDER,<br>COPLAN & ARONOFF LLP**

Dated: July 31, 2019                    /s/ Michael J. Barrie
                                        Michael J. Barrie (No. 5057450)
Dave Rammelt (*pro hac vice forthcoming*)   39 Broadway, 25th Floor
Nick Secco (*pro hac vice forthcoming*)     New York, NY 10006-3039
200 Public Square, Suite 2300           Telephone: (302) 442-7010
Cleveland, Ohio 44114                   Facsimile: (302) 442-7012
drammelt@beneschlaw.com                 mbarrie@beneschlaw.com
nsecco@beneschlaw.com

Sean A. Meluney (*pro hac vice forthcoming*)   *Counsel to Defendant SmileDirectClub, LLC*
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801
smeluney@beneschlaw.com