UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAYLOR SOLLINGER,

                                    Plaintiff,

                -v-

SMILEDIRECTCLUB, LLC,

                                    Defendant.

19-CV-5977 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Taylor Sollinger brings this putative class action against Defendant

SmileDirectClub, LLC, a company that sells custom aligners to straighten teeth. Sollinger

claims that SmileDirectClub's aligners caused him tooth damage. Accordingly, Sollinger brings

claims under state and federal law. SmileDirectClub, in turn, has moved to compel arbitration.

For the reasons that follow, the motion is granted.

I.      **Background**

The following facts are undisputed unless otherwise noted.

Defendant SmileDirectClub, LLC is a company that offers remote home dentistry

services, including the sale of custom aligners for straightening teeth. (Dkt. No. 5 ("Compl.")

¶ 2.) One of its customers is Plaintiff Taylor Sollinger, who began using SmileDirectClub's

aligners in 2017. (Compl. ¶ 4.) In order to begin treatment, Sollinger was first required to

register as a customer on SmileDirectClub's website. (Dkt. No. 24-1 ("Skinner Aff.") ¶¶ 6, 9.)

During the online registration process, Sollinger affirmatively checked a box indicating that he

agreed to SmileDirectClub's "Informed Consent," "Terms," and "SmilePay Conditions."

(Skinner Aff. ¶¶ 6, 10.) The Informed Consent is presented to users as a hyperlink that, when

clicked, takes the user to a separate page that displays the text of the agreement.  (Skinner Aff.

¶ 7.)  The Informed Consent agreement contains the following provision:

> AGREEMENT TO ARBITRATE — I hereby agree that any dispute regarding the products and services offered my [*sic*] SmileDirectClub and/or affiliated dental professionals, including but not limited to medical malpractice disputes, will be determined by submission to arbitration and not my [*sic*] lawsuit filed in any court, except claims within the jurisdiction of Small Claims Court . . . . I agree that the arbitration shall be conducted by a single, neutral arbitrator selected by the parties and shall be resolved using the rules of the American Arbitration Association.

(Skinner Aff. ¶ 19.)

Shortly after beginning use of SmileDirectClub's aligners, Sollinger experienced tooth pain and sensitivity.  (Compl. ¶ 5.)  He sought treatment from a dentist, who advised him that two teeth were cracked and required fillings.  (*Id*.)  The dentist ascribed the tooth damage to SmileDirectClub's aligners.  (Compl. ¶ 6.)

In 2019, Sollinger commenced this suit against SmileDirectClub on behalf of a putative class of purchasers, owners, and users of SmileDirectClub aligners.  (Compl. ¶¶ 27–35.) Sollinger brings claims under both state and federal law.  (Compl. ¶¶ 36–98.)  SmileDirectClub has moved to compel arbitration.

## II.    Legal Standard

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, parties can petition the district court for an order directing that "arbitration proceed in the manner provided for in such agreement."  *Id.* § 4.  The district court must stay proceedings once it is "satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (quoting *McMahan Sec. Co. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 85 (2d Cir. 1994)).  In deciding motions to compel, courts

apply a "standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

The summary judgment standard requires a court to "consider all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). In doing so, the court must draw all reasonable inferences in favor of the nonmovant. *See Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171–72 (2d Cir. 2011).

## III. Discussion

"The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate" at all. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). That question is "necessarily for the court and not the arbitrator." *Id.* And "[w]hether or not the parties have agreed to arbitrate is a question of state contract law." *Id.* at 119.[1]

Under New York law, the "touchstone of contract" is "[m]utual manifestation of assent, whether by written or spoken word or by conduct." *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 464 (S.D.N.Y. 2017) (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002)). Here, Sollinger "did not click on the hyperlinks for the . . . Informed Consent during his registration process." (Skinner Aff. ¶ 14; *accord* Dkt. No. 16 ¶ 5.) "[W]here, as here, there is no evidence that the [website] user had actual knowledge of the agreement, the validity of the . . . agreement turns on whether the [website] puts a reasonably prudent user on inquiry

---

[1] The parties do not dispute that New York law governs this case. (*See* Dkt. No. 15 at 12 n.21; Dkt. No. 24 at 6.)

notice of the contract." *Applebaum*, 263 F. Supp. 3d at 465 (second alteration in original) (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). The question of "inquiry notice" turns on "the totality of the circumstances." *Id.* at 466.

SmileDirectClub's website provides the requisite inquiry notice. It presents the Informed Consent agreement as "clickwrap," which refers to "the assent process by which a user must click 'I agree,' but not necessarily view the contract to which she is assenting." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 394–95 (E.D.N.Y. 2015). As a general matter, "[i]n New York, clickwrap agreements are valid and enforceable contracts." *Whitt v. Prosper Funding LLC*, No. 15-CV-136, 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015) (quoting *Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*, No. 8-CV-5463, 2011 WL 744732, at *7 (S.D.N.Y. Mar. 1, 2011)); *see also Berkson*, 97 F. Supp. 3d at 397 ("[A]lmost every lower court to consider the issue has found 'clickwrap' licenses, in which an online user clicks 'I agree' to standard form terms, enforceable." (alterations omitted) (quoting Mark A. Lemley, 91 Minn. L. Rev. 459, 459 (2006)).

The clickwrap agreement in this case is no exception, as established by the totality of the circumstances. The registration screen is relatively "uncluttered," *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017), containing fields only for a password, the user's date of birth, indications who the product is for and how the user learned of SmileDirectClub, and an unchecked box next to the text, "I agree to SmileDirectClub's Informed Consent and Terms & SmilePay Conditions." (Dkt. No. 11-5.) That text, which includes a hyperlink to the Informed Consent agreement, is "directly adjacent' to the button intended to manifest assent to the terms." *Meyer*, 868 F.3d at 78 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236 (2d Cir. 2016)). The hyperlinks "contrast[] with the . . . background" and "are in blue and underlined." *Id.* Further, the registration screen is designed so that the "entire screen is visible at once, and the

user does not need to scroll . . . to find notice of the Terms." *Id.* Accordingly, the Court concludes based on the undisputed facts that a reasonable user would be on inquiry notice of the Informed Consent agreement.

Sollinger's arguments to the contrary lack bite. Sollinger first objects to the placement of the arbitration agreement in the "Informed Consent" agreement, rather than in the "Terms" or the "SmilePay Conditions." (Dkt. No. 15 at 15.) But the "location of [an] arbitration clause" is not "itself a 'barrier to reasonable notice.'" *Meyer*, 868 F.3d at 79 (quoting *Meyer v. Kalanick*, 200 F. Supp. 3d 408, 421 (S.D.N.Y. 2016)). And the use of "heading[s]" and "capitalized admonition[s]" indicating the presence of an arbitration provision (here, "Aligner Risks" and "AGREEMENT TO ARBITRATE" (Dkt. No. 11-3 at 2, 4)) further "minimize[s] any impact that the location of the arbitration provision itself would have." *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 557 (S.D.N.Y. 2018). At any rate, the Informed Consent agreement is a logical location for an arbitration provision governing the resolution of disputes — such as medical malpractice suits — that would arise out of the use of SmileDirectClub's aligners.

Sollinger next argues that the Informed Consent agreement's arbitration provision is invalid because of the inclusion of a "conflicting venue provision" in the "Terms" agreement that mandates a forum "in a state or federal court located in Southeastern Michigan." (Dkt. No. 15 at 15 (quoting Dkt. No. 11-4 at 5).) This argument is equally toothless. The presence of a forum-selection clause does not void an arbitration provision "if there is a reading of the various agreements that permits the [a]rbitration [c]lause to remain in effect." *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005). Here, a harmonious reading is readily available. The "Terms" agreement governs "use [of] Site Information [by the user] for [her] personal information and for shopping and ordering on the Site." (Dkt. No. 11-4 at 3.) The

Informed Consent agreement, on the other hand, governs the scope of the user's consent to "the practice of health or dental care delivery, diagnosis, consultation, treatment, [and] transfer of medical/dental information." (Dkt. No. 11-3 at 6.) The "Terms" agreement, then, has no application to Sollinger's claim, which arises out of medical treatment and not the use of SmileDirectClub's website. Accordingly, the arbitration provision remains intact.[2] The Court concludes that the parties have indeed agreed to arbitrate.

Once a court has made the threshold determination that the parties have agreed to arbitrate, the next question is "whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). "Before addressing [this] inquiry, [the court] must also determine who — the court or the arbitrator — properly decides the issue [of arbitrability]." *Id.*

Here, the correct decisionmaker is the arbitrator. Although there is a "general presumption that the issue of arbitrability should be resolved by the courts," *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005), the presumption can be overcome by "*clear and unmistakable evidence* . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator," *id.* (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002)). One example of "clear and unmistakable evidence" is the parties' choice to "incorporat[e] by reference the . . . Rules [of the American Arbitration Association]," because

---

[2] Sollinger adduces *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522 (2d Cir. 2011), but the case is readily distinguishable. In *Applied Energetics*, the Second Circuit found that an arbitration provision was abrogated by a later-in-time provision that required "[a]ny dispute arising out of this Agreement [to] be adjudicated in . . . [courts in] New York." *Id.* at 523. There, the later-in-time provision was "all-inclusive" and did not "admit[] the possibility of the other." *Id.* at 525. Here, in contrast, the forum-selection clause is not "all-inclusive" — the clause governs only "action[s] based on or alleging a breach of this Agreement [the Terms of Use]." (Dkt. No. 11-4 at 5.) *Applied Energetics* is therefore inapposite.

the AAA's rules include an instruction that arbitrators are to determine their own jurisdiction. *Id.* at 211; *see also Lismore v. Societe Generale Energy Corp.*, No. 11-CV-6705, 2012 WL 3577833, at *5 (S.D.N.Y. Aug. 17, 2012). In this case, the Informed Consent agreement provides that any arbitration "shall be resolved using the rules of the American Arbitration Association." (Dkt. No. 11-3 at 5.) Thus, an arbitrator — and not this Court — should determine whether any of the disputes in this case are subject to arbitration under the Informed Consent agreement.

That raises the question of remedy. When a plaintiff's claims are arbitrable, the ordinary remedy contemplated by the Federal Arbitration Act is a stay. *See* 9 U.S.C. § 3. But when *all* of the issues raised in a complaint are subject to arbitration, dismissal is appropriate. *See, e.g.*, *Ramasamy v. Essar Glob. Ltd.*, 825 F. Supp. 2d 466, 471 (S.D.N.Y. 2011). That is so here. Accordingly, the case is dismissed.[3]

## IV. Conclusion

For the foregoing reasons, Defendant's motion to compel arbitration is GRANTED. Plaintiff's motion for oral argument is DENIED as moot.

The Clerk of Court is directed to close the motions at Docket Numbers 11 and 26 and to close this case.

SO ORDERED.

Dated: February 18, 2020
New York, New York

J. PAUL OETKEN
United States District Judge

---

[3] Because Defendant's motion to compel arbitration is granted, Plaintiff's motion for oral argument (Dkt. No. 26) is denied as moot.